UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

IGNATIOS MASTELLOS and ERATO
MASTELLOS,

                             Plaintiffs,

                  v.

JPW INDUSTRIES, INC. and DEVLIEG-
BULLARD, INC.,

                             Defendants.

**MEMORANDUM & ORDER**

17-CV-415 (MKB)

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiffs Ignatios Mastellos and Erato Mastellos commenced the above captioned action against Powermatic on April 7, 2016 in in the Supreme Court of the State of New York, County of Queens. (Verified Compl., annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1.) On January 25, 2017, Defendants removed the action to the Eastern District of New York based on diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal, Docket Entry 1.) Plaintiff amended the Complaint three times before filing the fourth Amended Complaint ("FAC") against Defendants JPW Industries, Inc. ("JPW") and DeVlieg-Bullard, Inc. on March 31, 2020. (FAC, Docket Entry No. 61.) In the FAC, Plaintiffs assert product liability, breach of express and implied warranty, failure to warn, and loss of consortium claims based on Defendants' allegedly defective Powermatic table saw. Plaintiffs allege that the table saw caused severe physical injury to Ignatios Mastellos. (*See generally* FAC.)

Defendant JPW[1] now moves for summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure as to all claims, and Plaintiffs oppose the motion.[2]  JPW also moves to

exclude the opinions of Plaintiffs' expert, Alden Gaudreau, pursuant to Rule 702 of the Federal

Rules of Evidence, and Plaintiffs oppose the motion.[3]

For the reasons set forth below, the Court grants JPW's motion for summary judgment

and denies JPW's motion to exclude the expert as moot.

### I.   Background

The following facts are undisputed unless otherwise noted.[4]

#### a.   Factual background

##### i.   Powermatic business

In 1979, Powermatic-Houdaille manufactured the Powermatic Table Saw, Model 66,

Serial No. 7966706.  (Def.'s 56.1 ¶¶ 11–12.)  In 1986, Defendant DeVlieg-Bullard purchased

---

[1]  Defendant DeVlieg-Bullard, Inc. has not appeared in this action.  On September 30, 2019, the Clerk of Court entered default against DeVlieg-Bullard, Inc.  (Clerk's Entry of Default, Docket Entry No. 58.)  On October 11, 2019, Plaintiffs moved for default judgment as to DeVlieg-Bullard, Inc., (Mot. for Default J., Docket Entry No. 59), and on September 4, 2020, the Court deferred ruling on Plaintiffs' motion for default judgment until after the remaining parties filed all dispositive motions, (Order dated Sept. 4, 2020).

[2]  (JPW's Mot. for Summ. J., Docket Entry No. 101; JPW's Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem."), Docket Entry No. 101-2; JPW's Reply in Supp. of Mot. for Summ. J. ("Def.'s Reply"), Docket Entry No. 103; Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pls.' Opp'n"), Docket Entry No. 102.)

[3]  (JPW's Mot. in Limine to Exclude Alden Gaudreau, Docket Entry No. 109; JPW's Mem. in Supp. of Mot. to Exclude ("JPW's Excl. Mem."), Docket Entry No. 110; JPW's Reply in Supp. of Mot. to Exclude ("JPW's Excl. Reply"), Docket Entry No. 111; Pls.' Affirmation in Opp'n & Mem. in Opp'n ("Pls.' Excl. Opp'n"), Docket Entry No. 112.)

[4]  (JPW's Rule 56.1 Stmt. of Material Facts ("Def.'s 56.1"), Docket Entry No. 101-1; Pls.' Resp. to Def.'s 56.1 ("Pls.' 56.1 Resp."), Docket Entry No. 102-1; Pls.' Stmt. of Additional Facts ("Pls.' 56.1 Additional Facts"), Docket Entry No. 102-1; JPW's Reply to Pls.' 56.1 Stmt. ("Def.'s 56.1 Reply"), Docket Entry No. 104.)

Powermatic-Houdaille.  (*Id.* ¶ 23.)  In July of 1999, DeVlieg-Bullard filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court").  (*Id.* ¶ 25.)  Pursuant to the bankruptcy proceedings, the Bankruptcy Court "entered an order establishing a procedure by which competing offers could be submitted for the purchase of the assets of DeVlieg-Bullard's Powermatic Division (the "Powermatic Assets")."  (*Id.* ¶ 26.) Defendant JPW successfully purchased the Powermatic Assets on September 27, 1999 in an auction, (*id.* ¶ 27), and on September 30, 1999, the Bankruptcy Court issued an order noting that JPW and DeVlieg-Bullard were submitting an Amendment to the Asset Purchase Agreement indicating that JPW purchased the Powermatic Assets from DeVlieg-Bullard,[5] (Def.'s 56.1 Reply ¶¶ 6–10).  The Amendment to the Asset Purchase Agreement states that it incorporates the terms of the initial Asset Purchase Agreement.  (*Id.* ¶ 11.)

The Asset Purchase Agreement states in pertinent part:

> **1.4 Assumption of Liabilities**. Subject to the conditions specified in this Agreement, Buyer hereby agrees to assume at the Closing and discharge when due and payable the following liabilities of Seller related to the Business (the "Assumed Liabilities"): . . .
>
> (c) <u>Warranty Claims</u>.  All liabilities for warranty claims with respect to products of the Business, regardless of whether such claim occurred before, on or after the Closing Date;
>
> (d) <u>Product Liability Claims</u>.  All liabilities for product liability claims with respect to products of the Business sold on or after the Closing Date; . . .
>
> (f) <u>Liabilities</u>.  All liabilities of the Business occurring or arising after the Closing Date, including contributions required to be made to employee pension benefit plans for benefits earned in the period during which the Business is operated by Buyer on behalf of former employees of the Business;

___

[5]  The Asset Purchase Agreement was originally part of a proposal created by Sunhill NIC Company Inc., a company that was considering purchasing the Powermatic Assets.  (Def.'s 56.1 Reply ¶ 5.)

> **1.5 Retained Liabilities**. All liabilities not expressly assumed by
> Buyer herein shall be retained by Seller.

(Asset Purchase Agreement, annexed as Ex. B. to Decl. of Robert S. Romano in Supp. of Def.'s

Mot. ("Romano Decl."), annexed as Ex. D to Def.'s Mem., Docket Entry No. 101-2.)

JPW did not exchange any stock in the purchase of the Powermatic Assets from DeVlieg-

Bullard, and neither JPW nor any of its shareholders gained any interest in DeVlieg-Bullard, nor

did DeVlieg-Bullard or its shareholders gain any interest in JPW. (Def.'s 56.1 ¶¶ 35–36.) After

the sale of the Powermatic Assets, DeVlieg-Bullard continued to exist as a separate and distinct

entity from JPW. (*Id.* ¶ 37.) JPW asserts that DeVlieg-Bullard continued to purchase insurance

to cover potential product liability claims arising from its manufacture and sale of "Powermatic"

products and continued to purchase such insurance in the ordinary course of business during its

tenure as a debtor in possession under Chapter 11, but Plaintiffs deny this assertion as not

supported by the evidence. (Pls.' 56.1 Resp. ¶ 38.)

### ii.   Ignatios' injury

Ignatios Mastellos worked as a cabinet and furniture maker for CAS Custom Kitchens.

(Def.'s 56.1 ¶ 6.) Ignatios initially began working as a carpenter in Greece when he was 13

years old. (*Id.* ¶ 1.) While living in Greece, Ignatios attended technical school for three years

where he specialized in carpentry and learned about potential hazards of using table saws

including learning about kick-backs. (*Id.* ¶¶ 2–3.) He also learned about the importance of using

blade guards to reduce the risk of injury while operating table saws. (*Id.* ¶¶ 4.)

On October 16, 2013, Ignatios was cutting plywood using a "Powermatic Table Saw,

Model 66, Serial No. 7966706" manufactured in 1979 by Powermatic-Houdaille. (*Id.* ¶¶ 5, 7,

11–12.) CAS Custom Kitchens purchased the Powermatic saw at some time around or before

1991 and provided it to Ignatios.[6]  (*Id.* ¶¶ 5–7, 11.)  There was no guard in place on the saw.  (*Id.* ¶ 10.)  While Ignatios was cutting plywood for a cabinet, the saw kicked back and cut fingers on his left hand to the point that his "fingers were hanging."  (Def.'s 56.1 Reply ¶ 52.)  Ignatios did not read a manual or any warnings or instructions on the saw prior to operating it.  (Def.'s 56.1 Reply ¶¶ 58–59.)

### c.  Pending motions

In the FAC, Plaintiffs assert product liability, breach of express and implied warranty, and failure to warn claims, alleging that Defendants' table saw product was defective and caused severe physical injury to Ignatios Mastellos.  (*See generally* FAC.)  Plaintiffs also assert a loss of consortium claim on behalf of Erato Mastellos, Ignatios' wife.  (FAC.)

On February 6, 2023, JPW moved for summary judgment as to all of Plaintiffs' claims arguing that JPW cannot be held liable under a successor liability theory under the terms of the Asset Purchase Agreement, and that the evidence does not support Plaintiffs' claims of manufacturing defect, design defect, or failure to warn.  (*See generally* Def.'s Mem.)  JPW also argues that because Ignatios' claims cannot be maintained against JPW, the loss of consortium claim must also be dismissed.  (*See id.*)  On April 13, 2023, JPW moved to exclude the opinion of Plaintiffs' expert Alden Gaudreau, arguing that Gaudreau is not qualified to testify as an

---

[6] The parties dispute the exact year the Powermatic table saw was purchased.  JPW argues that CAS Custom Kitchens purchased the saw at an auction sometime before 1981. (Def.'s 56.1 ¶ 16.)  Plaintiffs argue that there is no documentation regarding when the subject saw was sold or purchased, but that Tasos Yerolemou, the previous owner of CAS Custom Kitchens, testified that the saw was purchased approximately thirty years prior to his deposition in 2021.  (Pls.' 56.1 Resp. ¶ 16.)  Therefore, it is undisputed that the Powermatic saw was purchased by CAS Custom Kitchens sometime prior to 1999 when JPW purchased the Powermatic Assets.

expert in contravention of Federal Rule of Evidence 702, and that Gaudreau's opinions are unreliable and speculative. (*See generally* JPW's Excl. Mem.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (same). The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)); *see also Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (same). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)); *see also Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (same). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-CV-3976, 2022 WL 1133010,

at *1 (2d Cir. Apr. 18, 2022) (first citing *Anderson*, 477 U.S. at 248; then citing *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)); *see also Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000) (same).

### b. JPW's motion for summary judgment

JPW makes several arguments in support of its motion for summary judgment. First, JPW argues that it cannot be held liable for Ignatios' accident under a theory of successor liability because JPW is not a continuation of DeVlieg-Bullard and JPW did not assume liability for Ignatios' alleged injury. (Def.'s Mem 9–15.) Second, JPW also argues that the evidence does not support Ignatios' product liability claims, (*id.* at 15–17), express or implied warranty claims against JPW, (*id.* at 20–22), or failure to warn claims, (*id.* at 17). Finally, that Erato Mastellos' derivative loss of consortium claim must be dismissed because Ignatios' claims cannot prevail. (*Id.* at 22.)

Plaintiffs argue that the Court should find, as a matter of law, that JPW assumed the liability for Ignatios' accident as owner of the Powermatic assets. (Pls.' Opp'n 1–3.) Second, Plaintiffs argue that the contractual language of section 1.4(f) of the Asset Purchase Agreement, which lists the liabilities that JPW assumed from DeVlieg-Bullard when purchasing the Powermatic assets is, at the very least, ambiguous and therefore, the interpretation of it is a question to be decided by the jury. (*Id.* at 3–9.) Third, Plaintiffs argue that Ignatios has a valid design defect claim, (*id.* at 9–18), and fourth, they argue that JPW has assumed warranty claims and Ignatios has a valid breach of warranty claim, (*id.* at 18–22). Lastly, Plaintiffs argue that they have a valid failure to warn claim and that JPW's "open and obvious" defense is inapplicable. (*Id.* at 22.)

The Court finds that JPW did not assume liability for Ignatios' alleged injury because (1)

the terms of the Asset Purchase Agreement and Amendment disclaim liability for products sold before the date JPW assumed ownership over the Powermatic assets, and (2) JPW only assumed express and implied warranty claims for Powermatic products sold by DeVlieg-Bullard, not those sold by Powermatic-Houdaille.  In addition, the Court finds that Plaintiffs' failure to warn claims fail on the merits.  Because the Court grants JPW's motion as to all other claims, it accordingly grants JPW's motion as to Plaintiffs' loss of consortium claim.

### i.   Successor liability

JPW argues that it cannot be held liable for Ignatios' injuries under a successor liability theory.  First, it argues that JPW only purchased the Powermatic Assets from DeVlieg-Bullard and that it was not a continuation of DeVlieg-Bullard after DeVlieg-Bullard went bankrupt.  (Def.'s Mem. 10–11.)  Second, JPW argues that it did not assume liability for Ignatios' injuries pursuant to the Bankruptcy Court Order and the Asset Purchase Agreement.  (*Id.* at 11–15.)  In support, it argues that the Bankruptcy Court Order states that the Powermatic Assets will be sold to JPW free and clear of all liabilities other than those expressly assumed by JPW pursuant to the Asset Purchase Agreement and Amendment.  (*Id.* at 11.)  JPW argues the Asset Purchase Agreement explicitly states that JPW did not assume any liability for product liability claims arising from Powermatic products sold before October 15, 1999.  (*Id.* (citing Asset Purchase Agreement § 1.4(d)).)  In addition, JPW argues that it did not assume liability for Ignatios' warranty claims because section 1.4(c) of the Asset Purchase Agreement does not apply to the Powermatic saw that Ignatios was using.  (*Id.* at 12–13.)  JPW argues that section 1.4(c) encompasses warranty claims with respect to "products of the Business" which does not include the saw Ignatios was using and, in any event, does not encompass personal injury claims like the one Ignatios is alleging.  (*Id.* at 13.)  JPW also argues that interpreting section 1.4(c) of the Asset

Purchase Agreement to permit product liability claims for products sold prior to when JPW purchased the Powermatic assets, would "improperly eviscerate the protections provided by Section 1.4(d)." (*Id.* at 14.) Finally, JPW argues that any ambiguity in the contract should not be construed against it because it did not actually draft the Asset Purchase Agreement. (Def.'s Reply 5.)

Plaintiffs argues that as a matter of law, JPW assumed liabilities under the Asset Purchase Agreement. In support, Plaintiffs argue first, that section 1.4(f) of the Asset Purchase Agreement explicitly states that JPW assumed "[a]ll liabilities of the Business occurring on or arising after the Closing Date." (Pls.' Opp'n 1.) Second, Plaintiffs argue that to the extent that section 1.4(f) is considered "ambiguous," then the contract is legally ambiguous and a jury should determine its interpretation. (*Id.* at 3–8.) Plaintiffs argue that a reasonable interpretation of the contract is that section 1.4(d), in which JPW assumed product liability for products sold on or after the Closing date, was meant to only apply to then-existing claims, but section 1.4(f) was meant to apply to future claims. (*Id.* at 4.) Plaintiffs also argue that the Asset Purchase Agreement and Amendment do not define "product liability claims," and that under principles of contract interpretation, an ambiguous contract must be construed against the party who prepared it, in this case, JPW. (*Id.* at 7.)

"Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities," including contracts. *Byrd v. Republic of Honduras*, 613 F. App'x 31, 33 (2d Cir. 2015) (quoting *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006)); *see also N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 227–28 (2d Cir. 2014) ("When a corporation

purchases the assets of another corporation, it does *not* acquire its liabilities. . . ." (citing *Nat'l Serv. Indus.*, 460 F.3d at 209)).

However, "a buyer of a corporation's assets will be liable as its successor" if "(1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." *Nat'l Serv. Indus.*, 460 F.3d at 209; *see also Byrd*, 613 F. App'x at 33–34 (quoting *Nat'l Serv. Indus.*, 460 F.3d at 209); *FirstEnergy Corp.*, 766 F.3d at 227–28 (quoting same).[7]

As to the first exception that a successor will be held liable where it expressly or impliedly assumed the predecessor's tort liability, "[t]here is a presumption that the purchasing entity in an asset purchase agreement does not inherit the selling entity's liabilities." *Gurbacki v. Walco Elec. Co.*, No. 19-CV-01656, 2023 WL 3355096, at *6 (W.D.N.Y. Apr. 14, 2023) (quoting *Vasquez v. Ranieri Cheese Corp.*, No. 07-CV-464, 2010 WL 1223606, at *11 (E.D.N.Y. Mar. 26, 2010)), *report and recommendation adopted*, 2023 WL 3344441 (W.D.N.Y. May 10, 2023). "[W]hen an asset purchase agreement includes language specifically stating that unspecified liabilities are not being purchased, courts do not interpret these agreements as impliedly assuming any tort liabilities not expressly included in the agreement." *Id.*; *see also Beck v. Roper Whitney, Inc.*, 190 F. Supp. 2d 524, 534 (W.D.N.Y. 2001) (assessing agreement that waived "[a]ny and all liabilities or obligations of Seller (not specifically assumed)," finding

---

[7] Plaintiffs only argue a theory of successor liability under the first factor – that JPW assumed the liabilities of DeVlieg-Bullard – therefore, that is the only relevant exception at issue. (*See* Pls.' Opp'n 1.)  JPW also argues that it cannot be held liable under a "mere continuation" theory (*see* Def.'s Mem. 10), because Plaintiffs raised it in their FAC, but Plaintiffs appear to have abandoned this argument in their opposition brief, (*see* Pls.' Opp'n 1–3).

that "[t]his express disclaimer of liability warrants a finding that the first exception for finding successor liability does not apply. . . ."); *Peralta v. WHM Tool Grp., Inc.*, No. 04-CV-3826, 2005 WL 2002454, at \*3 (E.D.N.Y. Aug. 19, 2005) ("With respect to the first exception, defendant cannot be held to have expressly or impliedly assumed the predecessor's tort liability as to products sold prior to the asset purchase since it specifically disavowed such liability in the Asset Purchase Agreement."); *Desclafani v. Pave–Mark Corp.*, No. 07-CV-4639, 2008 WL 3914881, at \*4 (S.D.N.Y. Aug. 22, 2008) (reviewing terms of a purchase agreement to determine what liabilities the successor corporation assumed).  "The party alleging successor liability 'has the burden of proving facts which bring the case within one of the[ ] exceptions.'"  *Silverman Partners LP v. Verox Grp.*, No. 08-CV-3103, 2010 WL 2899438, at \*3 (S.D.N.Y. July 19, 2010).

Because the general rule is that "a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities," *Byrd*, 613 F. App'x at 33–34, JPW can only be found liable under a theory of successor liability if one of the exceptions applies. JPW took ownership of the Powermatic assets from DeVlieg-Bullard pursuant to the Asset Purchase Agreement and Amendment, thus the purchase agreement dictates which liabilities JPW assumed.  *See, e.g.*, *Gurbacki*, 2023 WL 3355096, at \*6 (reviewing purchase agreement to determine which liabilities successor corporation assumed); *Desclafani*, 2008 WL 3914881, at \*4 (same); *Peralta*, 2005 WL 2002454, at \*3 (same).

Section 1.4 of the Asset Purchase Agreement and Amendment lists the various liabilities that JPW expressly assumed and those that it disclaimed.  The Court therefore considers whether the exceptions apply to Plaintiffs' product liability and warranty claims.[8]

---

[8] JPW did not seek to dismiss Plaintiffs' failure to warn claim for a lack of successor liability.  (*See generally* Def.'s Mem.)

### 1.    Product liability claim

JPW has demonstrated that as a matter of law, it only assumed products liability claims for products sold on or after the Closing date of its purchase of the Powermatic assets.

"[I]t is a fundamental rule of contract construction that 'specific terms and exact terms are given greater weight than general language.'"  *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 97 n.7 (2d Cir. 2021) (quoting *Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001)); *see also In re AMR Corp.*, 730 F.3d 88, 99 (2d Cir. 2013) ("Under New York law, 'a specific provision . . . governs the circumstance to which it is directed, even in the face of a more general provision.'" (quoting *Cap. Ventures Int'l v. Republic of Argentina*, 652 F.3d 266, 271 (2d Cir. 2011))); *Travelers Indem. Co. of Ill. v. F & S London Pub, Inc.*, 270 F. Supp. 2d 330, 334 (E.D.N.Y. 2003) ("It is black letter contract law 'that where there is 'inconsistency between a specific provision of a contract and a general provision of a contract . . . the specific provision controls.'" (quoting *Madison 52nd Corp. v. Empire Tr. Co.*, 208 N.Y.S.2d 466 (1960))); 11 Williston on Contracts § 32:10 (4th ed.) ("When general and specific clauses conflict, the specific clause governs the meaning of the contract.").  "Even where there is no true conflict between two provisions, specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate." *Aramony*, 254 F.3d at 413–14 (internal quotation marks omitted).

Section 1.4 of the Asset Purchase Agreement governs the "Assumption of Liabilities" between the Buyer, JPW, and Seller, DeVlieg-Bullard.  Section 1.4 states:

> **1.4 Assumption of Liabilities**. Subject to the conditions specified in this Agreement, Buyer hereby agrees to assume at the Closing and discharge when due and payable the following liabilities of Seller related to the Business (the "Assumed Liabilities"): . . .

(d) <u>Product Liability Claims</u>.  All liabilities for product liability claims with respect to products of the Business sold on or after the Closing Date; . . .

(f) <u>Liabilities</u>.  All liabilities of the Business occurring or arising after the Closing Date, including contributions required to be made to employee pension benefit plans for benefits earned in the period during which the Business is operated by Buyer on behalf of former employees of the Business;

(Asset Purchase Agreement § 1.4.)  Section 1.4(d) details product liability claims specifically and makes clear that JPW was not assuming liability for products of the Business sold before the Closing Date, meaning that JPW would only assume liabilities for product liability claims for products sold on or after the Closing Date.  However, section 1.4(f) states that JPW would assume all liabilities of the Business occurring or arising after the Closing Date.

Contrary to Plaintiffs' argument, the more specific contractual language of section 1.4(d) controls.  *See, e.g.*, *City of New York v. Bell Helicopter Textron, Inc.*, No. 13-CV-6848, 2015 WL 3767241, at *11 (E.D.N.Y. June 16, 2015) (finding that brief, general language in a contract "does not override the clear and precise limitations" set forth in another provision of the contract); *Travelers Indem. Co. of Ill.*, 270 F. Supp. 2d at 334 (finding that, in the context of a property insurance contract, a general indemnification clause was constrained by a more specific provision addressing losses from fire).

The Powermatic Table Saw at issue was sold on or before 1991.  (*See* Pls.' 56.1 Resp. ¶ 16.)  JPW officially purchased the Powermatic assets pursuant to the Asset Purchase Agreement and Amendment on September 30, 1999.  (Def.'s 56.1 Reply ¶¶ 3–10.)  Pursuant to section 1.4(d), JPW assumed products liability for Powermatic products sold *on or after* September 30, 1999, therefore, JPW could not have assumed liability for a product liability claim with respect to a Powermatic saw that was sold years before JPW purchased the Powermatic assets.

Moreover, adopting Plaintiffs' interpretation of the Asset Purchase Agreement would render section 1.4(d) superfluous. It is a "principle of New York contract law that any interpretation 'that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 124 (2d Cir. 2022) (quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992)); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (same); *Glob. Funding Grp., LLC v. 133 Cmty. Rd.*, Ltd., 251 F. Supp. 3d 527, 531 (E.D.N.Y. 2017) ("[A] court must consider the entire contract to avoid adopting an interpretation that would result in an inconsistency between provisions or that would render a particular provision superfluous." (citation omitted)). Section 1.4(d) specifically addresses product liability claims, (*see* Asset Purchase Agreement § 1.4(d) ("All liabilities for product liability claims . . .")), while section 1.4(f) refers to all liabilities, (*see* Asset Purchase Agreement § 1.4(f) ("All liabilities of the Business . . .")). Reading the general liability provision of section 1.4(f) to include the product liability claims specified in section 1.4(d) would render section 1.4(d) meaningless. *See, e.g.*, *Certified Multi-Media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 150 F. Supp. 3d 228, 244 (E.D.N.Y. 2015) (rejecting a defendant's interpretation of a contract where defendant's interpretation would render a paragraph superfluous) *aff'd*, 674 F. App'x 45 (2d Cir. 2017); *Travelers Indem. Co. of Ill.*, 270 F. Supp. 2d at 334 (rejecting an interpretation of an insurance policy because "Paragraph 4 of the Lease would be rendered meaningless if the indemnity clauses were read to encompass any and all damage to the Property, regardless of fault"); *Promuto v. Waste Mgmt., Inc.*, 44 F.Supp.2d 628, 650 (S.D.N.Y. 1999). Therefore, as a

matter of law, section 1.4(d) of the Asset Purchase Agreement and Amendment prohibits Plaintiffs' product liability claims against JPW.[9]

Accordingly, the Court dismisses Ignatios' product liability claims against JPW.

### 2.   Express and implied warranty claims

JPW has demonstrated that, as a matter of law, it did not assume liability for Plaintiffs' express and implied warranty claims because the Asset Purchase Agreement does not apply to the Powermatic Table Saw that Ignatios was operating at the time of his accident.

"When interpreting a contract, the 'intention of the parties should control, and the best evidence of intent is the contract itself.'" *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.,* 603 F.3d 169, 180 (2d Cir. 2010) (quoting *Hatalmud v. Spellings*, 505 F.3d 139, 146 (2d Cir. 2007) (alterations omitted)); *see also CP III Rincon Towers, Inc. v. Cohen*, 666 F. App'x 46, 51 (2d Cir. 2016) ("The primary objective of contract interpretation is to give effect to the intent of the contracting parties 'as revealed by the language they chose to use.'" (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993))); *Biremis, Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 11-CV-4934, 2012 WL 760564, at *5 (E.D.N.Y. Mar. 8, 2012) ("As with any issue of contract interpretation, the court begins with the language of the contracts at issue."); *Dittman v. Dyno Nobel, Inc.*, No. 97-CV-1724, 2000 WL 151950, at *2 (N.D.N.Y. Feb. 10, 2000) ("Contract interpretation begins with the plain language of the contract."). "[I]f, in the context of the entire agreement, the plain meaning of the text is clear, our inquiry ends there." *CP III Rincon Towers, Inc.*, 666 F. App'x at 51.

---

[9] Because the Court concludes as a matter of law that Plaintiffs' product liability claims must be dismissed, the Court does not discuss JPW's other arguments in favor of dismissing Plaintiffs' product liability claims.

Section 1.4(c) of the Asset Purchase Agreement governs the "Assumption of Liabilities" between JPW and DeVlieg-Bullard as to warranty claims:

> **1.4 Assumption of Liabilities**. Subject to the conditions specified in this Agreement, Buyer hereby agrees to assume at the Closing and discharge when due and payable the following liabilities of Seller related to the Business (the "Assumed Liabilities"): . . .
>
> (c) <u>Warranty Claims</u>.  All liabilities for warranty claims with respect to products of the Business, regardless of whether such claim occurred before, on or after the Closing Date; . . .
>
> (f) <u>Liabilities</u>.  All liabilities of the Business occurring or arising after the Closing Date, including contributions required to be made to employee pension benefit plans for benefits earned in the period during which the Business is operated by Buyer on behalf of former employees of the Business;

(Asset Purchase Agreement § 1.4.)  Unlike section 1.4(d) (discussed above), which governs product liability claims arising on or after the Closing, section 1.4(c) states that JPW assumes liabilities for warranty claims that "occurred *before*, on, or after the Closing Date."  (*Id.* § 1.4(c) (emphasis added).)

JPW argues that the phrase "products of the Business" in section 1.4(c) of the Asset Purchase Agreement refers to products from the Powermatic Division of DeVlieg-Bullard and therefore does not apply to the Powermatic Table Saw used by Ignatios because it was manufactured in 1979 by Powermatic-Houdaille.[10]  (Def.'s Mem. 12–13.)  The Court concludes that JPW's interpretation of section 1.4(c) is correct.  The Asset Purchase Agreement defines the "Business" as the Powermatic Division of DeVlieg-Bullard: "WHEREAS, [DeVlieg-Bullard] operates the Powermatic Division which is engaged in the business of designing, manufacturing,

---

[10]  Plaintiff failed to address this argument in its opposition brief and has arguably abandoned any defenses of its express and implied warranty claims.  (*See generally* Pls.' Opp'n.); *see Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

sourcing, marketing, selling and servicing power tools and manufacturing castings for the Powermatic Division and third-parties under the name "Powermatic®" (herein, the "Business")." (*See* Asset Purchase Agreement 1.)  As JPW argues, the Powermatic Table Saw that Ignatios was operating when he injured himself was not manufactured by DeVlieg-Bullard, but was instead manufactured by Powermatic-Houdaille which produced the Powermatic Table Saw before DeVlieg-Bullard acquired the Powermatic business.  (*See* Def.'s 56.1 ¶¶ 5, 7, 11–12, 23.)  The language of section 1.4 states that JPW assumed "[a]ll liabilities for warranty claims with respect to products of the Business," which would not include products made by Powermatic-Houdaille because those were not Powermatic products by the DeVlieg-Bullard "Business."  Therefore, the Powermatic Table Saw that injured Ignatios was not a "product of the Business" as defined in the Asset Purchase Agreement, and thus, section 1.4(c) does not apply to Ignatios' claims against JPW.  *See, e.g.*, *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-7483, 2018 WL 5045760, at *14 (E.D.N.Y. Oct. 17, 2018) (granting defendant summary judgment as to plaintiff's claim for breach of contract where the contractual language was clear that either party could terminate the agreement).  To the extent that Plaintiffs argue that the general liability provision in section 1.4(f) means that JPW assumed liability for Plaintiffs warranty claims, for the reasons discussed above, the more specific contractual provision controls over a general one.[11]  *See, e.g.*, *Bell Helicopter Textron, Inc.*, 2015 WL 3767241, at *11; *Travelers Indem. Co. of Ill.*, 270 F. Supp. 2d at 334.

---

[11] Even assuming that there is successor liability for Plaintiffs' express and implied warranty claims, the Court also notes that Plaintiffs' claims appear to be barred by the statute of limitations.  Under New York law, the statute of limitations for breach of warranty claims is four years. *See Baker v. Stryker Corp.*, 770 F. App'x 12, 15 (2d Cir. 2019) ("Section 2-725 of the New York Uniform Commercial Code establishes a four-year statute of limitations for breach of warranty claims."); N.Y. UCC § 2–725; *see also Tinnell v. Invacare Corp.*, 819 F. Supp. 2d 192,

Accordingly, the Court dismisses Plaintiffs' express and implied warranty claims against JPW.

### ii. Failure to warn claim

JPW argues that it did not have a duty to warn Ignatios because (1) the hazards of using a table saw are open and obvious to ordinary users; (2) Ignatios is a sophisticated user of table saws; and (3) any alleged lack of warnings did not cause Ignatios' accident.  (Def.'s Mem. 18–19.)

Plaintiffs argue first that "the open and obvious defense is inapplicable" and has been rejected multiple times in New York.  (Pls.' Opp'n 22–23.)  Second, Plaintiffs argue that a question of fact exists regarding JPW's breach of a duty to warn, including failing to properly warn about the foreseeable use of the saw without a utilization of the guard.  (*Id.* at 25.)  Finally, Plaintiffs argue that Ignatios' failure to read the manual for the Powermatic table saw does not require dismissal of failure to warn claims.  (*Id.*)

To establish a claim for failure to warn, a plaintiff must prove "(1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm."  *State Farm Fire & Cas. Co. v. Nutone, Inc.*, 426 F. App'x 8, 10 (2d Cir. 2011) (citing *Liriano v. Hobart Corp.*, 92

---

199 (W.D.N.Y. 2011); *Gurbacki*, 2023 WL 3355096, at *7.  "A claim for breach of express or implied warranty 'accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of such breach.'  Further, '[a] breach of warranty occurs when tender of delivery is made.'"  *Tinnell*, 819 F. Supp. 2d at 199 (quoting N.Y. UCC § 2–725(2)).

It is undisputed that the Ignatios' employer, CAS Custom Kitchens, purchased the Powermatic Table Saw sometime prior to 1999 when JPW purchased the Powermatic Assets.  (*See supra* n.6.)  Ignatios' accident did not occur until October 16, 2013 (*see* FAC ¶ 52), and therefore, the statute of limitations expired long before Ignatios' accident.  *See, e.g.*, *Gurbacki*, 2023 WL 3355096, at *7 (finding that a warranty claim was barred by the statute of limitations where the plaintiff's employer purchased the allegedly defective product sixteen years before plaintiff's accident).

N.Y.2d 232, 237 (1998)); *see also Wu Jiang v. Ridge Tool Co.*, 764 F. App'x 43, 45 (2d Cir.

2019) ("Under New York law, '[a] manufacturer has a duty to warn against latent dangers

resulting from foreseeable uses of its product of which it knew or should have known.'" (quoting

*Liriano*, 92 N.Y.2d at 237)); *Bravman v. Baxter Healthcare Corp.,* 984 F.2d 71, 75 (2d Cir.

1993) ("A plaintiff proceeding under a failure-to-warn theory in New York must demonstrate

that the failure to warn adequately of the dangers of a product was a proximate cause of his or

her injuries." (citing *Glucksman v. Halsey Drug Co., Inc.*, 553 N.Y.S.2d 724, 726 (App. Div.

1990))).  "As part of satisfying those elements, a plaintiff is 'required to prove that the product

did not contain adequate warnings.'"  *Reed v. Pfizer, Inc.,* 839 F. Supp. 571, 575 (E.D.N.Y.

2012) (quoting *Mulhall v. Hannafin*, 841 N.Y.S.2d 282, 285 (App. Div. 2007)).

 Under New York law, "when a user is aware of the dangers of using a product, the

supplier cannot be held liable for a failure to warn." *Wu Jiang*, 764 F. App'x at 45; *see also*

*Billiar v. Minn. Min. & Mfg. Co.*, 623 F.2d 240, 243 (2d Cir. 1980) ("When the user is fully

aware of the nature of the product and its dangers, however, the supplier cannot be held liable for

failure to warn him."); *Leibstein v. LaFarge N. Am. Inc.*, 689 F. Supp 373, 388 (E.D.N.Y.

2010) ("Under New York law, the knowledgeable user exception exempts manufacturers and

distributors from liability for a failure to warn where the user was 'fully aware of the nature of

the product and its dangers." (quoting *Billiar*, 623 F.2d at 243)).  "The knowledgeable user

exception is usually reserved for professionals or other experts who are experienced with the

product in question." *Leibstein*, 689 F. Supp. 2d at 388 (internal quotation marks omitted); *see*

*also Wu Jiang*, 764 F. App'x at 46 ("The knowledgeable user exception is most often applied to

professionals and skilled tradespeople.").  "General knowledge that the product is dangerous

does not suffice; to fall under the exception, the user must have known about the 'specific

hazard' that caused the injury." *Leibstein*, 689 F. Supp. 2d at 389 (quoting *Donald v. Shin Fu Co. of Am.*, No. 99-CV-6397, 2022 WL 32068351, at \*8 (E.D.N.Y. Sept. 4, 2002)). "Although in appropriate cases a court may as a matter of law decide that a manufacturer's warning would have been superfluous given an injured party's actual knowledge of the specific hazard that caused the injury, where reasonable minds might disagree as to the extent of the plaintiff's knowledge of the hazard, the question is one for the jury." *Id.* (internal quotation marks, citations, and alterations omitted).

Ignatios falls under the knowledgeable user exception.[12] As JPW argues, Ignatios "was a sophisticated user of table saws who did not require warnings." (Def.'s Mem. 19.) At the time of his accident, Ignatios had been working as a carpenter for over six decades beginning when he in Greece as a thirteen-year-old teenager. (Def.'s 56.1 ¶ 1.) Ignatios attended technical school for three years where he specialized in carpentry and learned about potential hazards of using table saws including learning about kickbacks. (*Id.* ¶¶ 2–3.) He also learned about the importance of using blade guards to reduce the risk of injury while operating table saws. (*Id.* ¶ 4.) In addition, Ignatios was working as a cabinet and furniture maker for CAS Custom Kitchens so he was a skilled tradesperson for whom the "knowledgeable user exception is usually reserved." *Wu Jiang v. Ridge Tool Co.*, No. 15-CV-4124, 2018 WL 1525660, at \*4 (E.D.N.Y. Mar. 27, 2018), *aff'd*, 764 F. App'x at 46; *see also Wu Jiang*, 764 F. App'x at 46 (affirming

---

[12] Plaintiffs failed to respond to JPW's argument regarding the knowledgeable user exception. "Where a partial response to a motion [for summary judgment] is made — *i.e.*, referencing some claims or defenses but not others . . . in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 14 (2d Cir. 2017) (alteration in original) (quoting *Jackson*, 766 F.3d at 197–98). Therefore, the Court considers abandoned any defenses Plaintiffs may have to JPW's knowledgeable user argument.

district court grant of summary judgment to defendants where plaintiff was a "professional contractor for over ten years," "received training," and  had "was knowledgeable about the dangers related to [the] use [of defendant's products]").

Accordingly, the Court finds that JPW did not have a duty to warn Plaintiffs and dismisses the failure to warn claim.

### iii.   Loss of consortium claim

JPW argues that Erato Mastellos cannot maintain her loss of consortium claims because they are derivative of Ignatios' claims against JPW and thus, if the Court dismisses Ignatios' claims, the Court must also dismiss Erato's claim.  (Def.'s Mem. 22.)

Plaintiffs do not respond to this argument.

"A claim for loss of consortium is derivative of the underlying claims." *Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 440 (E.D.N.Y. 2013) (citing *Gelber v. Stryker Corp.*, 788 F. Supp.2d 145, 167 (S.D.N.Y. 2011)), *aff'd*, 559 F. App'x 11 (2d Cir. 2014); *see also Delehanty v. KLI, Inc.*, 663 F. Supp. 2d 127, 134 (E.D.N.Y. 2009) ("[U]nder New York law, Mrs. Delehanty's claim [for loss of consortium] must also be dismissed because Mr. Delehanty's causes of action fail.").  Having dismissed all of Ignatios Mastellos' claims, the Court dismisses Erato Mastellos' claim for loss of consortium.

### III.   Conclusion

For the foregoing reasons, the Court grants JPW's motion for summary judgment and dismisses all claims against JPW.[13]

Dated:  September 9, 2023
        Brooklyn, New York

                                        SO ORDERED:


                                        ____/s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge

---

[13]  Because the Court dismisses all of Plaintiffs' claims against JPW, the Court denies JPW's motion to exclude the opinion of Alden Gaudreau as moot.